RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

VINCENT D. WHITE, JR.,

　　　　　　　　　*Petitioner-Appellant*,

　　　　*v*.

WARDEN, ROSS CORRECTIONAL INSTITUTION,

　　　　　　　　　*Respondent-Appellee*.

┐
│
│
＞　No. 18-3277
│
│
┘

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:17-cv-00325—James L. Graham, District Judge.

Decided and Filed:  October 8, 2019

Before:  DAUGHTREY, GRIFFIN, and STRANCH, Circuit Judges

───────────────

**COUNSEL**

───────────────

**ON BRIEF:**  C. Mark Pickrell, Nashville, Tennessee, for Appellant.  William H. Lamb, OFFICE OF THE ATTORNEY GENERAL OF OHIO, Cincinnati, Ohio, for Appellee.  Vincent D. White, Jr., Youngstown, Ohio, pro se.

───────────────

**OPINION**

───────────────

　　　MARTHA CRAIG DAUGHTREY, CIRCUIT JUDGE.  Petitioner Vincent White seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He argues that he was deprived of his Sixth Amendment right to effective counsel when, unbeknownst to him, his trial attorney, Javier

───────────────

[1]Following this panel's request for supplemental briefing, petitioner sought oral argument.  We deem oral argument unnecessary in this case and deny petitioner's request.

Armengau, represented him while also under indictment for several serious offenses. White contends that this situation created potential and actual conflicts of interest that denied him the effective assistance of counsel. He further asserts that he was prejudiced by the prosecutor and trial court's failure to alert him about Armengau's indictment. The record regarding Armengau's alleged conflicts is sparse because White has never received an evidentiary hearing during which he could develop facts in support of his allegations of ineffective assistance. The warden argues that, because White filed his motion for post-conviction relief in state court two years beyond the deadline, White has procedurally defaulted his claim and, accordingly, may not supplement the record in federal court. We find that due to procedural hurdles in Ohio state court and because White did not have the aid of an attorney in his post-conviction proceedings, he had no meaningful opportunity to raise his ineffective-assistance claim. In light of the Supreme Court's decision in *Trevino v. Thaler*, 569 U.S. 413 (2013), which expanded the Court's earlier ruling in *Martinez v. Ryan*, 566 U.S. 1 (2012), we find that White has cause to overcome his default. We therefore vacate the district court's denial of a writ and remand the case for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a jury trial in Ohio state court, White was convicted of one count of aggravated burglary, three counts of aggravated robbery, four counts of aggravated murder, two counts of attempted murder, two counts of felonious assault, and one count of having weapons while under disability. He was sentenced to an aggregate term of life imprisonment without the possibility of parole.

As White was preparing for trial, his attorney, Javier Armengau, was indicted—by the same prosecutor's office as had charged White—for 18 counts of serious felony offenses related to, among other things, sexual misconduct, rape, and kidnapping involving his clients, relatives of his clients, and employees of his law office. *See State v. Armengau*, 93 N.E.3d 284, 292 (Ohio Ct. App. 2017). White alleges that his attorney, the prosecution, and the court all failed to inform him about Armengau's indictment or any issues it might have raised regarding his representation. As a result, Armengau continued to represent White throughout his trial and sentencing. Armengau was eventually tried and convicted on nine charges. *Id.* at 291.

As White tells it, he did not learn about Armengau's indictment until he began assembling his case for direct appeal. With this newfound knowledge, and with the assistance of different counsel, White appealed his conviction and sentence to the Ohio Court of Appeals. He raised multiple claims, including the only relevant issue here: whether he suffered constitutionally ineffective assistance of counsel due to Armengau's actual and potential conflicts of interest resulting from the lawyer's indictment.[2] The court denied White's appeal and, in doing so, declined to consider his ineffective-assistance claim, explaining that the record lacked sufficient evidence to allow the court to fully adjudicate the merits. *State v. White*, No. 14AP-160, 2015 WL 9393518, at *3 (Ohio Ct. App. Dec. 22, 2015). The court further explained that, because it required factual development unavailable on direct appeal, a direct appeal was "not the vehicle" for White's claim, suggesting, but not explicitly stating, that he should raise the issue in a motion for post-conviction relief. *Id.* However, the Ohio Court of Appeals did not issue its ruling until December 22, 2015—almost four months *after* the deadline for White to file a post-conviction motion in state court. White sought review of his direct appeal in the Ohio Supreme Court, but the court declined to accept jurisdiction. *State v. White*, 49 N.E.3d 321 (Table) (Ohio 2016).

Proceeding *pro se*, White then timely filed a federal petition seeking a writ of habeas corpus. After initiating his federal habeas petition, but before receiving a decision, White filed a motion seeking post-conviction relief in state court, also *pro se*, but his filing came almost two years after the deadline to seek such relief. The trial court, unsurprisingly, dismissed White's motion as untimely. *State v. White*, No. 12CR-4418, slip op. (Franklin Cty. Ct. of Common Pleas, Nov. 30, 2017). His motion for leave to appeal that order was likewise dismissed as untimely.[3] *State v. White*, No. 18AP-158, slip op. (Franklin Cty. Ct. of Common Pleas, Apr. 4, 2018).

---

[2]White's direct appeal and his state and federal habeas petitions raised multiple claims of ineffective assistance of counsel separate and distinct from his conflict-of-interest claim. For ease, and because the conflict-of-interest claim is the only ineffective-assistance claim in front of this panel, for the remainder of this opinion we refer to it simply as "the ineffective-assistance claim."

[3]In the district court, White moved for a stay so that he could continue pursuing his post-conviction appeals in state court. The district court denied that request, finding that such appeals would be fruitless and that the fact of White's assured denial sufficed to establish that he had exhausted his state court remedies.

In the district court, the warden argued that White procedurally defaulted his ineffective-assistance claim because his appeal to the Ohio Supreme Court advanced a separate legal theory. The district court disagreed and proceeded to the merits. Applying the deferential standard laid out in the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1)–(2), the court rejected White's ineffective-assistance claim but granted a certificate of appealability.[4]

## STANDARD OF REVIEW

When considering a petition for a writ of habeas corpus, we review a district court's legal conclusions *de novo* and its factual findings for clear error. *Wilson v. Sheldon*, 874 F.3d 470, 474 (6th Cir. 2017). Petitions filed after 1996 are generally governed by AEDPA's exacting standard. *Id.* However, AEDPA applies "only to claims that were adjudicated on the merits in State court proceedings." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014) (internal quotation marks and citation omitted). Thus, contrary to the district court's decision, AEDPA does not control White's ineffective-assistance claim because no state court ever considered the merits.

The only time a state court addressed this claim was on direct appeal. There, the Ohio Court of Appeals overruled White's assignment of error because it "lack[ed] the necessary facts to fully consider" the claim. *White*, 2015 WL 9393518, at *3. Although the Supreme Court has explained that "it may be presumed that [a] state court adjudicated [a] claim on the merits," this presumption is limited to situations in which there is an "absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). A dismissal of a claim explicitly acknowledging a court's procedural inability to sufficiently consider it constitutes an "indication" that the court did not adjudicate the claim on the merits. And, if there were any doubt about that, a review of Ohio law puts the uncertainty to rest. In *State v. Cooperrider*, 448 N.E.2d 452, 454 (Ohio 1983) (*per curiam*), the Ohio Supreme Court considered an ineffective-assistance-of-counsel claim raised on direct review. There, the lower court had overruled the claim because it could not "determine on the record before [it] whether" counsel's assistance was ineffective. *State v. Cooperrider*, No. 81AP-939, 1982 WL 4121, at *2

---

[4]A panel of this court denied White's motion to expand the certificate of appealability.

(Ohio Ct. App. Apr. 22, 1982).  Based on this language, the Ohio Supreme Court found it "clear that the court of appeals . . . did not adjudicate the issue," and that *res judicata* did not prevent the defendant from seeking an evidentiary hearing.  *Cooperrider*, 448 N.E.2d at 454.

We likewise find it clear that the Ohio Court of Appeals did not adjudicate the merits of White's ineffective-assistance claim.  Therefore, AEDPA does not apply here.  The district court should have considered White's claim *de novo*, and we now apply that standard.  *See Bies*, 775 F.3d at 396.

## DISCUSSION

Federal courts may not consider a petitioner's claims in federal habeas proceedings unless he has exhausted his state remedies and "compl[ied] with state procedural rules in presenting his claim to the appropriate state court."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  The district court determined, and we agree, that, despite the untimeliness of his post-conviction motion, White has satisfied the exhaustion requirement.  *See Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (holding that petitioner properly exhausted his ineffective-assistance claim by presenting it on direct appeal even though the court did not adjudicate the claim on the merits).  A question remains, however, as to whether his untimeliness precludes his federal claim because he did not "meet the State's procedural requirements for presenting his federal claims."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

We engage in a four-part inquiry when determining whether a claim is procedurally defaulted:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . [Fourth, the court must decide whether] there was cause for [the petitioner] to not follow the procedural rule and [whether] he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal quotation marks and citations omitted).  "To inform this inquiry, we look to the last explained state court judgment." *Stojetz v. Ishee*, 892 F.3d 175, 191 (6th Cir. 2018) (internal quotation marks and citations omitted).

The trial court's dismissal of White's motion for post-conviction relief easily satisfies the first three prongs of the *Maupin* test.  Ohio law contains a statutory deadline for collateral relief, which requires petitioners to file a motion for post-conviction relief within one year of the filing of transcripts in the petitioner's direct appeal.  Ohio Rev. Code § 2953.21(A)(2).  The parties do not contest that White failed to meet this deadline or that his untimeliness was the basis of the trial court's rejection of his claim and the denial of his motion for leave to appeal.  *See State v. White*, No. 12CR-4418, slip op. (Franklin Cty. Ct. of Common Pleas, Nov. 30, 2017).  And, a denial of post-conviction relief based on the petitioner's untimeliness is an independent and adequate state ground to establish default.  *See, e.g.*, *Walker v. Martin*, 562 U.S. 307, 317 (2011); *Hartman v. Bagley*, 492 F.3d 347, 357–58 (6th Cir. 2007).

In applying *Maupin's* fourth prong, we are left to consider whether White had cause for his non-compliance.  It is well established that, generally, a claim of ineffective assistance of appellate counsel is unavailable as a means of showing cause for petitioners whose default occurs during post-conviction proceedings, as White's did here.  *Coleman*, 501 U.S. at 752; *West v. Carpenter*, 790 F.3d 693, 697 (2015).  Because the Constitution does not guarantee a right to an attorney in collateral proceedings, in most cases, defendants cannot rely on their *pro se* status to overcome a procedural default at the post-conviction stage.  *West*, 790 F.3d at 697.

However, "[a] prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel." *Martinez*, 566 U.S. at 12.  Thus, in *Martinez v. Ryan*, the Supreme Court announced a "narrow exception" to the general rule, available to petitioners who can meet four requirements.  The petitioner must show that:  (1) he has a "substantial" claim of ineffective assistance of trial counsel; (2) he had "no counsel or counsel . . . was ineffective" in his collateral-review proceeding; (3) the collateral-review proceeding was the "initial" review of the claim; and (4) state law requires ineffective-assistance-of-trial-counsel claims to be raised in the first instance in a collateral-review proceeding.  *Id.* at 9, 17.

The following year, considering Texas's appellate process, the Court extended the *Martinez* exception by modifying the fourth requirement. *See Trevino*, 569 U.S. at 429. *Trevino v. Thaler* applied the *Martinez* framework to any state where "by reason of its design and operation, [state procedure] makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.*

As an initial matter, White certainly meets the first three *Martinez* requirements. First, he raises a "substantial claim of ineffective assistance." *Id.* at 416 (quoting *Martinez*, 566 U.S. at 17). White's claim is not without "any merit" or "wholly without factual support." *Martinez*, 566 U.S. at 16. Although the record is limited, it does establish that Armengau was under indictment for significant, even shocking charges while serving as White's counsel. This court has recognized that "a conflict of interest may arise where defense counsel is subject to a criminal investigation." *Moss v. United States*, 323 F.3d 445, 472 (6th Cir. 2003). Furthermore, at least one of our sister circuits has found ineffective assistance in a comparable circumstance. *See United States v. DeFalco*, 644 F.2d 132, 136–37 (3d Cir. 1979). Other circuits have likewise acknowledged the possibility that an attorney under investigation or indictment may face disqualifying conflicts of interest and, as a result, perform ineffectively. *See Reyes-Vejerano v. United States*, 276 F.3d 94, 99 (1st Cir. 2002) (deciding that counsel was not ineffective but recognizing that "[t]he argument is not frivolous that a defense lawyer within the sights of a targeted criminal prosecution may find his personal interests at odds with his duty to a client."); *Armienti v. United States*, 234 F.3d 820, 824–25 (2d Cir. 2000) (finding an ineffective-assistance claim "plausible" when defense lawyer was being criminally investigated by same prosecutors office as had charged defendant); *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir. 1992) ("A situation of this sort (the criminal defendant's lawyer himself under criminal investigation) . . . can create a conflict of interest."). Second, the parties do not dispute that White was without counsel during his state collateral proceedings. And, third, the collateral-review proceeding would have been the "initial" review of his ineffective-assistance claim because, as we have already explained, the Ohio Court of Appeals deemed direct appeal an inappropriate forum for White's ineffective-assistance claim. *State v. White*, No. 12CR-4418, slip op. (Franklin Cty. Ct. of Common Pleas, Nov. 30, 2017).

That leaves the fourth requirement of the *Martinez-Trevino* test. Although "[w]e have held that *Martinez* does not apply in Ohio because Ohio permits ineffective-assistance-of-trial-counsel claims on direct appeal," a question remains regarding the applicability of *Trevino* to Ohio prisoners. *Williams v. Mitchell*, 792 F.3d 606, 615 (6th Cir. 2015). White can only establish cause to overcome his procedural default if we determine that *Trevino* applies in his circumstances—that is, if we find that it was "highly unlikely" that a "meaningful opportunity" existed for the Ohio Court of Appeals to review his ineffective-assistance claim on direct review. *See Trevino*, 569 U.S. at 429.

"Ohio law appears to contemplate two kinds of ineffective assistance of counsel claims, those based only on evidence in the trial record and those based in part on evidence outside the record." *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 751 (6th Cir. 2013). The first type of ineffective-assistance claim is not relevant here, and we make no consideration or decision as to *Trevino*'s application to such claims. Instead, we focus on the second variety of ineffective-assistance claims—those that rely on facts outside of the record.

On direct appeal, Ohio law limits the reviewing court "to the record of the proceedings at trial." *Id.* (quoting *Morgan v. Eads*, 818 N.E.2d 1157, 1159 (Ohio 2004)). In *Trevino*, the Supreme Court recognized that "the need to expand the trial court record" is critical to ensuring meaningful review. 569 U.S. at 428. Ohio courts, too, have recognized this necessity and have refused to adjudicate ineffective-assistance claims on direct appeal because of the need for additional evidence. *See, e.g.*, *State v. Smith*, 477 N.E.2d 1128, 1131 n.1 (Ohio 1985) (noting that *res judicata* may not bar post-conviction relief where a court rejected defendant's direct appeal based on the trial record alone); *Cooperrider* 448 N.E.2d at 454 (holding that when "it is impossible to determine whether the attorney was ineffective in his representation of appellant where the allegations of ineffectiveness are based on facts not appearing in the record," defendants should avail themselves of post-conviction evidentiary hearing procedures). In these instances, Ohio effectively requires defendants to raise ineffective-assistance claims in post-conviction petitions. Indeed, the Ohio Court of Appeals did precisely this in White's case. *White*, 2015 WL 9393518, at *3. Practically speaking, then, Ohio law makes it "virtually

impossible" for defendants to meaningfully raise an ineffective-assistance-of-trial-counsel claim on direct appeal if the claim relies on evidence outside the record. *Trevino*, 569 U.S. at 417.

"Ohio . . . appears to expect appellate counsel to recognize the [two] types of [ineffective-assistance] claims and follow the proper procedure." *McGuire*, 738 F.3d at 751. According to White, his appellate counsel assured him that the Ohio Court of Appeals would consider his ineffective-assistance claim on direct appeal, perhaps thinking that the claim was clear on its face, without further evidence. The record does not contradict White, nor do we have any other reason to doubt his assertion at this stage. Given this advice, it makes sense that White did not know that he needed to file a motion for post-conviction relief until *after* he received the decision in his direct appeal, but by then his filing was already untimely.

The severity of Ohio's filing deadline for collateral relief compounded White's procedural troubles. As already noted, under Ohio law, a post-conviction petition must be filed within one year of the filing of transcripts in a defendant's direct appeal. Ohio Rev. Code § 2953.21(A)(2). A review of White's state court docket shows that his transcripts were filed on August 6, 2014. Ohio law, then, required that he file his post-conviction petition by August 5, 2015. But the Court of Appeals did not issue its decision alerting White to his need for a post-conviction petition, or clarifying which claims might be available to him in that forum, until more than four months after the deadline. *White*, 2015 WL 9393518, at *3. At that stage, White did not have the benefit of counsel, further contributing to his default. *See Martinez*, 566 U.S. at 12 ("The prisoner, unlearned in the law, may not comply with the State's procedural rules or may misapprehend the substantive details of federal constitutional law. . . . [And w]hile confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance.").

In *Martinez*, the Supreme Court explained that providing an avenue to overcome procedural default when a petitioner proceeds *pro se* in an initial-review collateral proceeding "acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel . . . may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id.* at 14. *Trevino* similarly recognized that procedural designs that "do[] not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of

trial counsel on direct appeal . . . will deprive the defendant of any opportunity at all for review of [that] claim." 569 U.S. at 428. The confluence of Ohio's general rule requiring the presentation of ineffective-assistance claims on direct review *unless* the record lacks sufficient evidence, the incorrect advice from White's appellate counsel that his record *did* contain sufficient evidence, and the tight procedural timeline imposed by Ohio's post-conviction-relief statute left White without a "meaningful opportunity" to obtain review of his substantial ineffective-assistance claim. *See id.*

Ohio's procedural framework effectively "channel[ed] initial review of [White's] constitutional claim to collateral proceedings." *Id.* at 423. Accordingly, under the *Martinez-Trevino* framework, we find that White has cause to overcome his procedural default because: he raised a substantial ineffective-assistance claim; he was without counsel during his post-conviction proceedings; the post-conviction proceeding was the initial opportunity for a merits assessment of the claim; and the design and operation of Ohio procedural law rendered it "highly unlikely" his claim could be reviewed on direct appeal. Because we find that White has cause, he satisfies the fourth prong in *Maupin* and is not barred from raising his claim of ineffective assistance based on Armengau's conflict of interest. *See Maupin*, 785 F.2d at 138; *see also Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013) (*en banc*) (concluding that after finding cause under *Martinez*, the trial court can continue to the merits of a petitioner's ineffective-assistance-of-trial-counsel claims); *see also Workman v. Superintendent Albion SCI*, 915 F.3d 928, 940 (3d Cir. 2019) (same).

Although, having determined that White has overcome his procedural default, we could proceed to the merits of his ineffective-assistance claim, we decline to do so for two reasons. First, as explained above, in its initial review of White's claim, the district court applied an incorrect standard of review. We therefore think it best that the district court have the first chance to consider the claim *de novo*.

Second, White has not yet been able to develop a factual record in support of his ineffective-assistance claim. The "absence of factual development . . . hamstrings this court's ability to determine whether" his trial counsel was constitutionally ineffective. *Woolbright v. Crews*, 791 F.3d 628, 637 (6th Cir. 2015). In *Woolbright*, we faced a similar situation and found

it appropriate to remand the matter to the district court for "full reconsideration" of the claims, including a determination of whether to conduct an evidentiary hearing. *Id.* This measured approach seems to us the best way forward here as well. *See Detrich*, 740 F.3d at 1247 (noting that petitioner demonstrating cause and availing himself of the *Martinez* exception is entitled to evidentiary hearing notwithstanding 28 U.S.C. § 2254(e)(2)).

## CONCLUSION

For the reasons explained above, we conclude that White is not procedurally barred from raising his ineffective-assistance claim and that the district court erred by applying the incorrect standard of review. We deem it most appropriate for the district court to consider, in the first instance, White's claim *de novo*, including whether he is entitled to an evidentiary hearing in order to supplement the record. We therefore VACATE the district court's ruling and REMAND this case for further proceedings consistent with this opinion.